## 07 - 20367

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA
### CASE NO. _____

FILED by ___ D.C.
INTAKE

FEB 0 9 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.   MIAMI

**07 - 20367**

ANTJE CUSANO, Individually, as
Surviving Spouse, and on Behalf of the
Estate of FELIX CUSANO, Deceased;
CATHY BROWNLEE, Individually, as
Surviving Spouse, and on Behalf of the
Estate of HAROLD C. BROWNLEE, Deceased;
JEAN WILLIAMS, Individually, as
Surviving Spouse, and on Behalf of the
Estate of JACK R. WILLIAMS, Deceased;
JUDITH A. SHUTE, Individually, as
Surviving Spouse, and on Behalf of the
Estate of MELVIN SHUTE, Deceased;
PRISCILLA A. TYLER, Individually, as
Surviving Spouse, and on Behalf of the
Estate of JIMMY TYLER, Deceased;
MELVIN RAY MCQUEEN, Individually, as
Surviving Son, and on Behalf of the
Estate of MELVIN EUGENE MCQUEEN, Deceased;
ZENOBIA BROCK, Individually, as
Surviving Spouse, and on Behalf of the
Estate of TOM BROCK, Deceased,

CIV-HOEVELER

MAGISTRATE JUDGE
BROWN

       **Plaintiffs,**

v.

       **JURY DEMAND**

MEDTRONIC, INC.

       **Defendant.**

### PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, ANTJE CUSANO, ("Plaintiff"), Individually, as Surviving Spouse, and on behalf of

the Estate of FELIX CUSANO, deceased; CATHY BROWNLEE, ("Plaintiff"), Individually, as

Surviving Spouse, and on behalf of the Estate of HAROLD C. BROWNLEE, deceased; JEAN

WILLIAMS, ("Plaintiff"), Individually, as Surviving Spouse, and on behalf of the Estate of

JACK R. WILLIAMS, deceased; JUDITH A. SHUTE, ("Plaintiff"), Individually, as Surviving

Spouse, and on behalf of the Estate of MELVIN SHUTE, deceased; PRISCILLA A. TYLER, ("Plaintiff"), Individually, as Surviving Spouse, and on behalf of the Estate of Jimmy Tyler, deceased; MELVIN RAY MCQUEEN, ("Plaintiff"), Individually, as Surviving Son, and on behalf of the Estate of MELVIN EUGENE MCQUEEN, deceased; and ZENOBIA BROCK, ("Plaintiff"), Individually, as Surviving Spouse, and on Behalf of the Estate of TOM BROCK, deceased, hereby state that by and through the undersigned counsel, they bring this action against Defendant Medtronic, Inc. and allege as follows:

## JURISDICTION AND VENUE

1.      Plaintiff, FELIX CUSANO, deceased, was at all relevant times a resident of the State of Florida.  Plaintiff Antje Cusado was and is at all relevant times a resident of the State of Florida.

2.      Plaintiff, HAROLD C. BROWNLEE, deceased, was at all relevant times a resident of the State of Georgia.  Plaintiff Cathy Brownlee was and is at all relevant times a resident of the State of Georgia.

3.      Plaintiff, JACK R. WILLIAMS, deceased, was at all relevant times a resident of the State of Mississippi.  Plaintiff Jean Williams was and is at all relevant times a resident of the State of Mississippi.

4.      Plaintiff, MELVIN SHUTE, deceased, was at all relevant times a resident of the State of New Jersey.  Plaintiff Judith A. Shute was and is at all relevant times a resident of the State of New Jersey.

5.      Plaintiff, JIMMY TYLER, deceased, was at all relevant times a resident of the State of Alabama.  Plaintiff Priscilla Tyler was and is at all relevant times a resident of the State of Alabama.

2

6.      Plaintiff, MELVIN EUGENE MCQUEEN, deceased, was at all relevant times a resident of the State of Texas.  Plaintiff Melvin Ray McQueen was and is at all relevant times a resident of the State of Texas.

7.      Plaintiff, TOM BROCK, deceased, was at all relevant times a resident of the State of Illinois.  Plaintiff Zenobia Brock was and is at all relevant times a resident of the State of Illinois.

8.      Defendant Medtronic, Inc. is a corporation existing under the laws of Minnesota with its principal place of business in that state, which manufactured, designed, tested, and provided labeling for certain heart defibrillators known as implantable cardioverter defibrillators (ICD) and cardiac resynchronization therapy.

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because plaintiffs allege that the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

10.     Defendant is incorporated and has its principal places of business in states other than the state in which Plaintiffs reside.

11.     At all relevant times, Medtronic was doing, transacting, soliciting and/or conducting business in the State of Florida and derived/derives substantial revenue from goods used and produced in the State of Florida and is hence subject to the jurisdiction of this Court. Specifically, Defendant Medtronic, by and through its subsidiary Medtronic USA, Inc. is directly involved in leading all Latin American Operations for Medtronic, including the manufacture and distribution of Medtronic ICDs and CRT-Ds throughout the United States and Latin America. Defendant Medtronic, Inc. on its website, represents currently that the principal place of business for Medtronic USA, Inc. is located at 2700 South Commerce Parkway, Suite 105 Weston,

3

Florida 33331, and that Medtronic USA, Inc is responsible for Latin American operations. Recently, Medtronic USA has moved its principal location to Doral, Florida in Dade County. Defendants, Medtronic, Inc. transacted business out of both Medtronic USA, Inc.'s Florida Latin American Headquarters in Doral, as well as through a joint office located in Tampa, Florida. In its recent Rule 26 disclosures filed in the United States District Court for the District of Minnesota, Medtronic, Inc. indicated that these recalled devices are manufactured and distributed from their Puerto Rico operation. This Puerto Rico operation is a key component to the company's Latin American Operations headed up by Medtronic USA, Inc. While denying that Medtronic USA actually manufactured or designed the recalled devices, Medtronic, Inc. in its papers filed before the Judicial Panel on Multi-District Litigation specifically failed to deny Medtronic USA, Inc.'s involvement in the distribution of the recalled devices manufactured in the Puerto Rico facility. Upon information and belief, Medtronic USA, Inc., is the patent holder for these devices, and in all of Medtronic's recent patent litigation, has been the lead Plaintiff in enforcing patents related to devices marketed by Medtronic.

12.     Venue in this Court is proper pursuant to 28 U.S.C. §1391 in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Medtronic is subject to personal jurisdiction in this district.

## **GENERAL ALLEGATIONS**

13.     At all material times hereto, Defendant Medtronic designed, manufactured, tested, marketed, distributed, promoted and/or sold implantable single-chamber cardioverter defibrillators (ICD) under the brand names of Model 7274 Marquis DR and Model 7289 InSync II Marquis, (hereinafter referred to as "Devices" or "Medtronic's Defective Devices").

4

14.     Medtronic's Defective Devices are tiered therapy implantable arrhythmia control devices, which are designed to provide automatic detection of ventricular arrhythmias and delivery of automatically delivered therapies for the detected arrhythmia.

15.     On or about July 25, 2002, Plaintiff, Felix Cusano, had Medtronic's Defective Device, Model 7274, Serial Number PKC100737H, implanted by Dr. Liberato Chapa, MD, of Cardiac Surgical Associates.

16.     Due to Defendant's recall, on or about April 20, 2005, Plaintiff, Felix Cusano's physician, Dr. Liberato Chapa of Cardiac Surgical Associates, explanted Medtronic's Defective Device, Model 7274, Serial Number PKC100737H, and replaced it with a new Medtronic Model 7288, serial number PUB112228H.

17.     On July 6, 2006, Mr. Felix Cusano died.

18.     On or about September 24, 2002, Plaintiff, Harold C. Brownlee, had Medtronic's Defective Device, Model 7274, Serial Number PKC101050H, implanted by Dr. Steve Prater, MD, of Atlanta Cardiology Group.  This was Plaintiff's first and only device implantation.

19.     On February 24, 2006 Mr. Harold C. Brownlee died as an immediate result of cardio-respiratory arrest.

20.     On or about September 3, 2002, Plaintiff, Jack R. Williams, had Medtronic's Defective Device, Model 7274, Serial Number PKC608629S, implanted by Dr. Mark Coppess, MD, of The Stern Cardiovascular Center.  This was Plaintiff's first and only device implantation.

21.     On January 15, 2006 Mr. Jack R. Williams died after having received medical advice from his doctor regarding the risk/benefits from surgically replacing the defective device. Due to Mr. Williams' health though, he was not able to go through device replacement surgery.

5

22.     On or about March 25, 2004, Plaintiff, Melvin Shute, had Medtronic's Defective Device, Model 7274, Serial Number PKC120421H, implanted by Dr. Charles H. Koo, MD, of Associated Cardiovascular Consultants. This was Plaintiff's first and only device implantation.

23.     On July 6, 2006 Mr. Melvin Shute died.

24.     On or about March 18, 2004, Plaintiff, Jimmy Tyler, had Medtronic's Defective Device, Model 7289, Serial Number PRJ602728S, implanted by Dr. Spencer Coleman of the VA Hospital in Birmingham, AL. This was Plaintiff's first and only device implantation.

25.     On August 29, 2006 Mr. Jimmy Tyler died.

26.     On or about November 13, 2003, Plaintiff, Melvin Eugene McQueen, had Medtronic's Defective Device, Model 7289, Serial Number PRJ605534S, implanted at Mesquite Community Hospital in Mesquite, Texas. This was Plaintiff's first and only device implantation.

27.     On September 15, 2005 Mr. Melvin Eugene McQueen died as an immediate result of congestive heart failure.

28.     On or about February 25, 2003, Plaintiff, Tom Brock, had Medtronic's Defective Device, Model 7274, Serial Number PKC111543H, implanted by Dr. Muhammad Akram, of St. Mary's Hospital.

29.     Due to Defendant's recall, on or about March 18, 2005, Plaintiff, Tom Brock's physician, Dr. Muhammad Akram, of St. Mary's Hospital, explanted Medtronic's Defective Device, Model 7274, Serial Number PKC111543H, and replaced it with a new Medtronic Model 7278. serial number PRM101240H.

30.     On August 7, 2006, Tom Brock died as an immediate result of ventricular fibrillation.

31.     In February of 2005, Medtronic issued a public notice that it was initiating a recall of Medtronic's Defective Device which said recall is formally known under the U.S. Food and Drug Administration Recall #: Z-0599-05.

32.     The reason provided under Recall #: Z-0599-05 for a recall is that Medtronic's Defective Device with batteries manufactured prior to December 2003 have experienced rapid battery depletion due to a specific internal battery short mechanism whereby total battery depletion can occur within a few hours resulting in a complete loss of device function.

33.     At the time Medtronic's Defective Device was implanted into Plaintiffs, Medtronic knew or should have known about the defective and life-threatening nature of its products and should have advised doctors about safety problems with its defibrillator models.

34.     Defendant placed the Devices, including the devices at issue in this matter, into the stream of worldwide commerce and interstate commerce in the United States, including Florida. Defendant did this without adequately testing the Devices, and with no warning that the Devices were defective, inherently dangerous, and unfit for the intended use as described herein.

35.     As a direct and proximate result of Medtronic's Defective Devices being placed into the stream of commerce by Defendant, Plaintiffs suffered injury, including physical and mental pain and suffering.

36.     Plaintiffs have also incurred significant medical, hospital, rehabilitative and/or pharmaceutical expenses, and/or other economic losses.

37.     Medtronic's Defective Devices were installed inside Plaintiffs' bodies surgically and were designed to shock or pace their hearts into normal rhythm in the event Plaintiffs suffered rapid, life-threatening heart rhythm disturbances. These heart rhythm disturbances can

7

lead to sudden cardiac arrest. The CRT-D devices provide electrical pulses to the heart in the event of heart failure symptoms.

38.     For a period of time believed to extend from April 2001-December 2003, Defendant placed a defective battery in these devices. These batteries are subject to rapid charge depletion due to a shorting of the battery, which leads to sudden, unpredictable loss of power without warning in some units.

39.     The Devices implanted into Plaintiffs contained defective batteries.

40.     In February 2005, Defendant disclosed to physicians and to the Food and Drug Administration the existence of, but not the magnitude of, the said defective battery issue, a condition of which they were aware for a long period of time.

41.     At all times relevant to this action, Defendant knew and/or had reason to know that the Devices were not safe for the patients for whom they were prescribed and implanted. The Devices contain a defective battery that causes shorting and an unpredictable loss of power without warning.

42.     As a result of this defective design and manufacture, Defendant's Devices can cause serious physical trauma, injury and/or death. Defendant knew or had reason to know of this tendency and the resulting risk of injury and/or death, preventing Plaintiffs and their health care providers from making informed choices about the implantation of the Devices.

43.     Implanted defibrillators have been one of the most popular and fastest growing types of medical devices. In 2005 alone, over 200,000 patients are expected to have received such defibrillators. Implanted defibrillators have been Medtronic's fastest growing product for at least the last three years.

44.     In its public disclosures, Medtronic has made the following representations:  that its ICDs are essential for saving lives; its manufacturing facilities are exceptional; and, its manufacturing processes reduced costs, improved quality, increased out-put and shortened the product development and manufacturing cycle of their ICDs, including Medtronic's Defective Devices.

45.     Medtronic has publicly claimed to be an open provider of information to patients and physicians.

46.     The FDA approved various implantable defibrillators designed, manufactured, and supplied by Defendant, including Plaintiffs' Devices.

47.     In marked contrast to these assurances, at some point prior to August of 2004, Medtronic learned that certain ICD devices suffered from the same problem that led to the withdrawal of Plaintiffs' Devices.

48.     Medtronic has attempted to make undisclosed design fixes to its defibrillators.

49.     Belatedly, in February of 2005, Medtronic finally began advising doctors about safety problems with defibrillator models, including Plaintiffs' Devices, and only then disclosed the defects to the public, including to Plaintiffs' physicians.

50.     Though Defendant knew or should have known that Plaintiffs' devices were defective prior to their implantation into Plaintiffs, neither Plaintiffs, nor their physicians had any idea that their defibrillators possessed any defect—much less the serious life-threatening defect described above.

51.     Plaintiffs suffered death as a result of Defendant's defective Devices and Defendant's failure to warn Plaintiffs and their physicians of the defective nature of its Devices.

52.     Until their deaths, Plaintiffs had any knowledge that the Devices were defective, unsafe, and dangerous because Plaintiffs had no reasonable way to discover this defect beforehand.

53.     Because information concerning the undisclosed, inherently dangerous characteristics of the Devices was concealed from Plaintiffs, Defendant was under a duty to disclose that Plaintiffs' devices were defective, unsafe, and inherently dangerous for the intended use, and failed to do so.

54.     Plaintiffs and their physicians relied upon the misrepresentations and omissions made by Defendant, Medtronic, on multiple occasions by Medtronic and its agents and representatives regarding the safety of the devices, the freedom of the device from any defects, the companies' knowledge of potential or actual defects, and the fitness for use of the products.

55.     The Medtronic devices are unreasonably dangerous and defective because:

        a.      the manufacturing processes for the defibrillators and certain of their components did not satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices;

        b.      the failure of the manufacturing processes for the defibrillators and certain of their components to satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices resulted in unreasonably dangerous manufacturing defects; and,

        c.      the Defendant failed to warn of the unreasonable risks created by these manufacturing defects.

56.     Although the Food and Drug Administration's Pre-Marketing Approval process imposed requirements on the Defendant in connection with the manufacture and marketing of Medtronic defibrillators, it did not impose specific health or safety requirements on the devices themselves.

10

57.     Defendant was negligent in that the Medtronic devices as listed in the Complaint were unreasonably dangerous and defective because the manufacturing processes for the defibrillators and certain of their components did not satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices; the failure of the manufacturing processes for the defibrillators and certain of their components to satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices resulted in unreasonably dangerous manufacturing defects, and the Defendant failed to warn of the unreasonable risks created by these manufacturing defects.

## COUNT I
## STRICT LIABILITY—FAILURE TO WARN

58.     Plaintiffs hereby incorporate and reallege the General Allegations, paragraphs 15 through 59, as if fully set forth herein.

59.     Defendant developed, manufactured, marketed, and distributed the devices implanted in Plaintiffs for sale and sold them in the course of their business and continued to do so even after acquiring knowledge that the devices were defective and could cause a recipient's premature death.

60.     The defective devices, manufactured by Medtronic, were implanted in Plaintiffs and were unreasonably dangerous when implanted due to the possibility of a cardiac failure resulting from battery depletion or otherwise.

61.     As a direct and proximate result of Defendant's failure to warn of this serious risk, the Plaintiffs have suffered damages.  Specifically, as a result of having these devices implanted, the Plaintiffs suffered, among other things, a significantly increased risk of death, which in fact proximately caused their death.

11

62.     Medtronic continued to sell defective versions of its defibrillators without any warning to physicians and/or patients, including the devices sold to and implanted in Plaintiffs, which it knew or should have known, were defective and dangerous.

63.     The Medtronic devices as listed in the Complaint were unreasonably dangerous and defective because:

        a.     the manufacturing processes for the defibrillators and certain of their components did not satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices;

        b.     the failure of the manufacturing processes for the defibrillators and certain of their components to satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices resulted in unreasonably dangerous manufacturing defects; and,

        c.     the Defendant failed to warn of the unreasonable risks created by these manufacturing defects.

64.     Although the Food and Drug Administration's Pre-Marketing Approval process imposed requirements on the Defendant in connection with the manufacture and marketing of Medtronic defibrillators, it did not impose specific health or safety requirements on the devices themselves.

Wherefore, Plaintiffs demand judgment for all damages available under law including but not limited to:  the physical pain and suffering of Plaintiffs, loss of enjoyment of life, extreme mental anguish and emotional distress, past medical expenses, and any other relief available under the law.

## COUNT II
## STRICT LIABILITY—DEFECTIVE DESIGN

65.     Plaintiffs hereby incorporate and reallege the General Allegations, paragraphs 15 through 59, as if fully set forth herein.

66.     At all relevant times, Defendant was engaged in the design, manufacture, and sale of the devices implanted in Plaintiffs.

67.     These devices, as designed by Defendant, were defective.

68.     As a result of Defendant's defective design, the devices implanted in Plaintiffs were unreasonably dangerous at the time Defendant sold them, and at the time they were implanted and used for their intended purpose.

69.     When it manufactured and sold the defective devices, Defendant was aware of the purpose and manner of their use.  Defendant knew that the products would reach consumers without substantial and/or significant change in the condition that Defendant sold them and the devices in fact reached Plaintiffs and other customers without substantial and/or significant change in condition.

70.     Failure of the devices could lead to, among other damages, personal injury and death.

71.     As a result of Defendant's defective design of these devices, Plaintiffs have been and will continue to be damaged.

72.     The Medtronic devices as listed in the Complaint were unreasonably dangerous and defective because:

     a.     the manufacturing processes for the defibrillators and certain of their components did not satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices;

     b.     the failure of the manufacturing processes for the defibrillators and certain of their components to satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices resulted in unreasonably dangerous manufacturing defects; and,

     c.     the Defendant failed to warn of the unreasonable risks created by these manufacturing defects.

13

73.     Although the Food and Drug Administration's Pre-Marketing Approval process imposed requirements on the Defendant in connection with the manufacture and marketing of Medtronic defibrillators, it did not impose specific health or safety requirements on the devices themselves.

Wherefore, Plaintiffs demand judgment for all damages available under law including but not limited to:  the physical pain and suffering of Plaintiffs, loss of enjoyment of life, extreme mental anguish and emotional distress, past medical expenses, and any other relief available under the law.

## COUNT III
## NEGLIGENCE

74.     Plaintiffs hereby incorporate and reallege the General Allegations, paragraphs 15 through 59, as if fully set forth herein.

75.     Defendant is the designer, manufacturer, seller, and/or supplier of the defective devices implanted into Plaintiffs.

76.     When placed in the stream of commerce, these defective devices were not accompanied by any meaningful warnings regarding the risk of personal injury and/or death associated with them.  The warnings given by Defendant were silent as to the particular risks for which the Devices have been recalled.

77.     Defendant had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of its defibrillators, including a duty to assure the Devices did not cause defibrillator recipients, including Plaintiffs, to suffer a risk of death.

78.     Defendant was negligent in the design, manufacture, testing, advertising, marketing, promotion, labeling, failure to warn, and sale of its defibrillators, including the

defective devices implanted into Plaintiffs. Defendant knew or should have known that heart patients, such as Plaintiffs, would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

79.     Defendant was further negligent in manufacturing the listed defibrillators, because:

a.     the manufacturing processes for the defibrillators and certain of their components did not satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices;

b.     the failure of the manufacturing processes for the defibrillators and certain of their components to satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices resulted in unreasonably dangerous manufacturing defects; and,

c.     the Defendant failed to warn of the unreasonable risks created by these manufacturing defects.

80.     Although the Food and Drug Administration's Pre-Marketing Approval process imposed requirements on the Defendant in connection with the manufacture and marketing of Medtronic defibrillators, it did not impose specific health or safety requirements on the devices themselves.

81.     Defendant's actions as described herein constitute knowing omissions, suppression or concealment of material facts, made with the intent that others would rely upon such concealment, suppression or omissions in connection with the marketing of the devices.

82.     The behavior of the Defendant demonstrates that it acted unlawfully and negligently, used or employed unconscionable commercial and business practices, engaged in deception, fraud, false pretenses, false promises or misrepresentations, and/or perpetrated the knowing concealment, suppression or omission of material facts with the intent that consumers,

including Plaintiffs, would rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of its defibrillators.

83.     As the direct and proximate cause and legal result of the Defendant's failure to provide appropriate warnings for the defective devices, and as a direct and legal result of the negligence, other wrongdoing and actions or omissions of Defendant described herein, Plaintiffs had the defibrillators implanted, and have suffered consequential damages including but not limited to: an increased risk of death; mental pain and anguish; and other injuries and damages including death.

84.     Defendant's negligence was the direct and proximate cause of Plaintiffs' injuries and damages set forth herein.

Wherefore, Plaintiffs demand judgment for all damages available under law including but not limited to: The physical pain and suffering of Plaintiffs, loss of enjoyment of life, extreme mental anguish and depression, past medical expenses, death, and any other relief available under the law.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

85.     Plaintiffs hereby incorporate and reallege the General Allegations, paragraphs 15 through 59, as if fully set forth herein.

86.     Defendant made misrepresentations and omissions of material facts, including, but not limited to:

    a.     Representing that the defective devices were fit for their intended use;

    b.     Representing that the defective devices were of merchantable quality;

16

c.     Representing that the defective devices were safe and efficacious in the treatment of Plaintiffs' medical conditions;

d.     Representing that the defective devices would function as intended when necessary;

e.     Omitting that the devices were defective, such that they would fail to function as intended; and,

f.     Omitting that the defective devices were inherently dangerous.

87.     These misrepresentations and/or omissions were false and misleading at the time they were made.

88.     Defendant negligently and carelessly made the foregoing misrepresentations without a basis and did not possess information on which to accurately base those representations.

89.     Defendant was further negligent in manufacturing the listed defibrillators, because:

a.     the manufacturing processes for the defibrillators and certain of their components did not satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices;

b.     the failure of the manufacturing processes for the defibrillators and certain of their components to satisfy the Food and Drug Administration's Pre-Market Approval standards for the devices resulted in unreasonably dangerous manufacturing defects; and,

c.     the Defendant failed to warn of the unreasonable risks created by these manufacturing defects.

90.     Although the Food and Drug Administration's Pre-Marketing Approval process imposed requirements on the Defendant in connection with the manufacture and marketing of

Medtronic defibrillators, it did not impose specific health or safety requirements on the devices themselves.

91.     Defendant was aware that it did not possess information on which to accurately base the foregoing representations and concealed from Plaintiffs that there was no reasonable basis for making said representations herein.

92.     When Defendant made the foregoing representations, it knew or should have known them to be false.

93.     In reliance upon the foregoing misrepresentations by the Defendant, Plaintiffs were induced to and did use the defective devices.  If Plaintiffs had known the true facts, Plaintiffs would not have taken such action and risk.  Plaintiffs' reliance on Defendant's misrepresentations and omissions was reasonable because said representations were made by individuals and entities in a position to know the true facts.

94.     As a result of the foregoing negligent misrepresentations by Defendant, Plaintiffs have suffered injury, disability, expense and economic loss at the hands of Defendant, rendering Defendant liable for said damages.

Wherefore, Plaintiffs demand judgment for all damages available under law including but not limited to:  the physical pain and suffering of Plaintiffs, loss of enjoyment of life, extreme mental anguish and emotional distress, past medical expenses, death, and any other relief available under the law.

## COUNT V
## FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

95.     Plaintiffs hereby incorporate and reallege the General Allegations, paragraphs 15 through 59, as if fully set forth herein.

18

96.    Defendant's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiffs to damages and relief under Fla. Stat. §§ 501.201-213.

97.    Plaintiffs are consumers within the meaning of FDUTPA, who were deceptively and unlawfully induced to purchase and/or have Defendant's defective devices implanted.

98.    Florida Statutes, Section 501.204 makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

99.    Florida Statutes, Section 501.211 creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

100.    Florida Statutes, Section 501.2105 provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein from the non prevailing party.

101.    Florida Statutes, Section 501.213 provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

102.    Florida Statutes, Section 501.203 (3)(c) states that a person has violated the Florida Deceptive and Unfair Trade Practices Act if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

103.    Defendant engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce defective products and/or devices which it knew or should have known were defective, which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

104.    Defendant's acts constitute unconscionable, deceptive, or unfair acts or practices in violation of FDUTPA.

19

Wherefore, Plaintiffs demand judgment for all damages available under law including but not limited to: pain and suffering, loss of enjoyment of life, extreme mental anguish and emotional distress, wrongful death, past and future medical expenses, economic damages, costs, pre- and post-judgment interest, attorneys' fees, and any other relief available under the law. As a result of Defendants unfair and deceptive trade practices, Plaintiffs are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if they prevail.

## COUNT VI
## WRONGFUL DEATH

105.   Plaintiffs hereby incorporate and reallege the General Allegations, paragraphs 15 through 59, as if fully set forth herein.

106.   At all times material hereto, Defendants owed a duty to Decedents to protect Decedents against reasonably foreseeable harms which a prudent person would anticipate were likely to result from the Defendants' acts or omissions.

107.   Defendants breached that duty when they acted in the negligent and/or tortious manner set forth in paragraphs above.

108.   Defendants' negligent and tortious conduct was the direct and proximate cause of Decedents' death.

109.   If death had not ensued, Decedents would have been entitled to maintain a cause of action and recover damages against Defendants because of the above alleged negligent and tortious conduct.

110.   As a direct, foreseeable and proximate result of Defendants' conduct. Decedents' estates have incurred medical and funeral expenses.

20

111.    As a direct, foreseeable and proximate result of the Defendants' conduct, Decedents' estates have been deprived of prospective net accumulations and loss of earnings.

112.    The claims for Wrongful Death Survival and/or those other claims available under applicable law set forth herein are hereby asserted on behalf of all persons having such claims. The following list of persons includes those parties presently known to the Personal Representative as having an interest in the Decedent, Felix Cusano's estate, for whom damages are sought under applicable Florida law, including but not limited to Florida's Wrongful Death Statute, to wit:

            A.      Antje Cusano, wife;

The following list of persons includes those parties presently known to the Personal Representative as having an interest in the Decedent, Harold Brownlee's estate, for whom damages are sought under applicable Florida law, including but not limited to Florida's Wrongful Death Statute, to wit:

            A.      Cathy Brownlee, wife;

The following list of persons includes those parties presently known to the Personal Representative as having an interest in the Decedent, Jack Williams' estate, for whom damages are sought under applicable Florida law, including but not limited to Florida's Wrongful Death Statute, to wit:

            A.      Jean Williams, wife;

The following list of persons includes those parties presently known to the Personal Representative as having an interest in the Decedent, Melvin Shute's estate, for whom damages are sought under applicable Florida law, including but not limited to Florida's Wrongful Death Statute, to wit:

    A.     Judith A. Shute, wife;

The following list of persons includes those parties presently known to the Personal Representative as having an interest in the Decedent, Jimmy Tyler's estate, for whom damages are sought under applicable Florida law, including but not limited to Florida's Wrongful Death Statute, to wit:

    A.     Priscilla Tyler, wife;

    B.     Pamela Tyler, daughter;

    C.     Stacy Pierce, daughter;

    D.     Kelli Harris, beneficiary;

    E.     Jennifer Adams, beneficiary;

    F.     Sharon Elaine Cox, beneficiary;

    G.     Kim Annette Barnes, beneficiary;

The following list of persons includes those parties presently known to the Personal Representative as having an interest in the Decedent, Melvin Eugene McQueen's estate, for whom damages are sought under applicable Florida law, including but not limited to Florida's Wrongful Death Statute, to wit:

    A.     Melvin Ray McQueen, son;

    B.     Hessie McQueen, daughter;

    C.     Barbara McQueen, daughter;

    D.     Melba McQueen, daughter;

    E.     Claude McQueen, son;

    F.     Vickie Duran, daughter;

    G.     Marcus Duran, son;

      H.      Steven Duren, son;

      I.      Vanessa McQueen, daughter

The following list of persons includes those parties presently known to the Personal Representative as having an interest in the Decedent, Tom Brock's estate, for whom damages are sought under applicable Florida law, including but not limited to Florida's Wrongful Death Statute, to wit:

      A.      Thomas Eugene Brock, son;

      B.      Amanda J. Depew, daughter;

113.    In addition to a claim for Wrongful Death, Plaintiffs assert survival claims in addition to claims for Wrongful Death for all injuries, damages, costs and fees, to the extent allowable by law.

Wherefore, Plaintiffs demand judgment for damages against Defendants for all damages allowable by law against Defendants together with interest, costs and attorneys fees, including but not limited to those damages provided pursuant to applicable law, as set forth below, and requests a trial by jury of all issues so triable, to wit:

    a.    The value of lost support and services from the date of the Decedents' injuries to the dates of death, with interest, and future loss of support and services from the dates of death and reduced to present value;

    b.    As to the surviving spouses, individually, losses as surviving spouses of decedents, including, for loss of companionship, protection, contribution and for mental pain and suffering from the dates of the injuries;

    c.    Medical or funeral expenses due to the decedents' injuries or deaths may be recovered;

d. Any and all loss of earnings of the deceased from the dates of injuries to the dates of deaths, less lost support of survivors excluding contributions in kind, with interest;

e. Loss of the prospective net accumulations of the estates, which might reasonably have been expected but for the wrongful deaths; and,

f. Medical or funeral expenses due to the decedents' injuries or deaths that have become a charge against the estates.

## COUNT VII
## LOSS OF CONSORTIUM

114. Plaintiffs hereby incorporate and reallege the General Allegations, paragraphs 15 through 59, as if fully set forth herein.

115. Plaintiff Antje Cusano is and at all times relevant hereto has been the lawful spouse of Deceased, Felix Cusano, and as such plaintiff is entitled to the comfort and enjoyment of society and services.

116. Plaintiff Cathy Brownlee is and at all times relevant hereto has been the lawful spouse of Deceased, Harold C. Brownlee and as such plaintiff is entitled to the comfort and enjoyment of society and services.

117. Plaintiff Jean Williams is and at all times relevant hereto has been the lawful spouse of Deceased, Jack R. Williams and as such plaintiff is entitled to the comfort and enjoyment of society and services.

118. Plaintiff Judith A. Shute is and at all times relevant hereto has been the lawful spouse of Deceased, Melvin Shute and as such plaintiff is entitled to the comfort and enjoyment of society and services.

119.   Plaintiff Priscilla Tyler is and at all times relevant hereto has been the lawful spouse of Deceased, Jimmy Tyler and as such plaintiff is entitled to the comfort and enjoyment of society and services.

120.   Plaintiff Zenobia Brock is and at all times relevant hereto has been the lawful spouse of Deceased, Tom Brock and as such plaintiff is entitled to the comfort and enjoyment of society and services.

121.   As a direct and proximate result of the foregoing misconduct of the Defendant, Plaintiffs have been deprived of their spouses' companionship, services, solace, consortium, affection and attention to which they are entitled.

122.   As a result of the foregoing, plaintiffs have been and will continue to be injured and damaged.

Wherefore, Plaintiffs demand judgment for all damages available under law including but not limited to: pain and suffering, loss of enjoyment of life, extreme mental anguish, past and future medical expenses, economic damages, costs, pre- and post-judgment interest, attorneys' fees, and any other relief available under the law.

## COUNT VIII
## WILFULL CONDUCT & PUNITIVE DAMAGES

123.   Plaintiffs hereby incorporate and reallege the General Allegations, paragraphs 15 through 59, as if fully set forth herein.

124.   At all times material, Defendant acted willfully, maliciously and/or with reckless disregard for the safety of ultimate consumers of the devices it manufactured, including Plaintiffs' devices.

125.   The conduct of the Defendant, as set forth herein, was so outrageous and improper as to constitute willful, wanton and reckless disregard for the safety of Plaintiffs, and the users and ultimate consumers of this product and, as such, Plaintiffs are entitled to and hereby claim Punitive Damages in this action.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and punitive damages in an amount to be determined by a jury.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims triable in this action.

Respectfully submitted this 8th day of February 2007.

Neil D. Overholtz, Esq.
Florida Bar No.: 0188761
Douglass A. Kreis, Esq.
Florida Bar No.: 0129704
*Aylstock, Witkin & Sasser, PLC*
4400 Bayou Boulevard, Suite 58
Pensacola, FL 32503-1909
(850) 916-7450 Phone
(850) 916-7449 Facsimile

26

**%JS 44** (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Antje Cusano, Individually, as Surviving Spouse, and on behalf of the Estate of Felix Cusano, deceased, et al

**DEFENDANTS**
Medtronic, Inc.;

**07-20367**

**(b)** County of Residence of First Listed Plaintiff   Pinellas, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Aylstock, Witkin & Sasser, PLC          Neil D. Overholtz
4400 Bayou Blvd., Suite 58
Pensacola, FL 32503

(850) 916-7450

Attorneys (If Known)

**CIV-HOEVELER**

**(d)** Check County Where Action Arose:  ☑ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☑ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**FILED by ___ D.C.**
**INTAKE**
**FEB 08 2007**
**CLARENCE MADDOX**
**CLERK U.S. DIST. CT.**
**S.D. OF FLA.**

## V. ORIGIN (Place an "X" in One Box Only)
☑ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Re-filed- (see VI below)
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO     b) Related Cases ☑ YES ☐ NO
JUDGE  Aldaberto Jordan     DOCKET NUMBER  05-61553

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. 1332

LENGTH OF TRIAL via  14  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
February 8, 2007

**FOR OFFICE USE ONLY**
AMOUNT $350.00  RECEIPT # 954555  IFP
02/07/07